Jyotin Hamid (jhamid@debevoise.com)
Corey S. Whiting (cwhiting@debevoise.com)
Lauren M. Weiner (lweiner@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

Douglas Lasdon (dlasdon@urbanjustice.org)
URBAN JUSTICE CENTER
123 William Street 16th Floor
New York, New York 10012
Tel: (646) 602-5600
Fax: (212) 533-4598

*Attorneys for Plaintiff Iraqi Refugee Assistance Project*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| IRAQI REFUGEE ASSISTANCE PROJECT, | : | |
| | : | No. 09 Civ. 10032 (LTS) |
| Plaintiff, | : | ECF Case |
| | : | |
| -against- | : | |
| | : | |
| UNITED STATES DEPARTMENT OF STATE, | : | |
| UNITED STATES DEPARTMENT OF HOMELAND | : | |
| SECURITY and UNITED STATES CITIZENSHIP AND | : | |
| IMMIGRATION SERVICES, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------------x

## COMPLAINT

Plaintiff Iraqi Refugee Assistance Project ("IRAP"), by its undersigned attorneys,

for its complaint for injunctive and other relief against Defendants United States

Department of State ("DOS"), United States Department of Homeland Security ("DHS") and United States Citizenship and Immigration Services ("USCIS"), alleges as follows:

### Preliminary Statement

1.      This is an action to enforce the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and to compel the release of certain important records concerning the United States Government's policies and procedures for addressing the Iraqi refugee humanitarian crisis.

2.      Millions of Iraqis have been displaced since U.S.–led coalition forces invaded Iraq in March 2003, thus confronting the international community, including the United States, with a massive refugee and humanitarian crisis.  IRAP is involved in advocacy on behalf of this vulnerable refugee population, including direct assistance to individual Iraqi refugees who face dire, life-threatening situations in their host countries and urgently seek admittance to the United States.

3.      To advance its work and effectively support individual Iraqi refugees' applications for entry to the United States, IRAP needs access to certain reports and records concerning the policies regulating and procedures used to admit Iraqi refugees into the United States and/or to provide Iraqi citizens with Special Immigrant Visas ("SIVs").  Defendants were expressly required by the Refugee Crisis in Iraq Act of 2007 to create and maintain many of the documents sought by IRAP.

4.      IRAP made valid FOIA requests to obtain the documents sought, in compliance with all statutory requirements, but Defendants have failed to comply with

their obligations under FOIA.  Accordingly, IRAP brings this action to enforce the statute and compel release of these critically important, validly requested materials.

## Jurisdiction and Venue

5.    This Court has both subject matter jurisdiction over IRAP's claims and personal jurisdiction over Defendant agencies pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

6.    Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e)(3) and 1402(a)(1), as two of IRAP's chapters are located in Manhattan, New York; New York University School of Law is located at 40 Washington Square South, New York, New York and Columbia Law School is located at 435 West 116th Street, New York, New York.

## Parties

7.    Plaintiff IRAP is a student organization established to facilitate individual representation of refugees, to advocate for policy changes with respect to refugees and to assist Iraqi refugee families in the United States.  IRAP currently has chapters in five law schools:  New York University School of Law, Columbia Law School, Yale Law School, University of California, Berkeley School of Law and Stanford Law School.  Each IRAP chapter is supported by its host law school.  IRAP has also partnered with eight law firms to provide refugees with *pro bono* legal counsel.  In addition, IRAP facilitates provision

of on-the-ground legal services to refugees in Amman, Jordan in cooperation with a clinical legal education program at the University of Jordan Law School.

8.      IRAP's focus is on the most urgent refugee cases.  These typically include cases of medical emergency, domestic abuse and human trafficking.  IRAP also attempts to assist members of religious and other minority groups who face persecution in their host countries.  IRAP identifies refugees in need of assistance by way of referrals from the United Nations High Commissioner for Refugees ("UNHCR") and various NGOs, including Save the Children, the Heartland Alliance, the American Civil Liberties Union, the Jordanian Legal Aid Society, the Collateral Repair Project, Direct Aid Iraq and the Mandaean Community Group.  Refugees are assigned law students, who work on their cases under the supervision of *pro bono* attorneys.  IRAP does not charge for its services. Since September 2008, IRAP has served approximately seventy refugees.

9.      Defendant United States Department of Homeland Security (DHS) is a federal agency with responsibility for securing the nation's borders, in part by enforcing federal immigration laws and overseeing the refugee process.  DHS is an agency within the meaning of 5 U.S.C. §§ 551(1) and 552(f).

10.      Defendant U.S. Citizenship and Immigration Services (USCIS) is a component entity of DHS.  USCIS is a federal agency with responsibility for managing the process of immigrating to the United States.  USCIS is responsible for interviewing Iraqi refugee applicants and adjudicating applications for refugee status.  USCIS is an agency within the meaning of 5 U.S.C. §§ 551(1) and 552(f).

11.     Defendant United States Department of State (DOS) is a federal agency with responsibility for conducting the foreign affairs of the United States, including granting, denying and revoking visas and setting visa policies and procedures.  The Bureau of Population, Refugees and Migration ("PRM"), a component entity of DOS, has responsibility for formulating U.S. policy on refugee assistance, including proposing admissions ceilings and processing priorities.  It administers the U.S. Refugee Admissions Program ("USRAP"), through which Iraqi refugees must pass to be admitted to the United States.  PRM receives refugee referrals from UNHCR, embassies and NGOs.  PRM enters into cooperative agreements with partner organizations and overseas processing entities ("OPE") that then prescreen cases and perform security checks of Iraqi refugee applicants, among other refugee processing tasks.  PRM funds the activities of its implementing partners and is responsible for monitoring them.  DOS is an agency within the meaning of 5 U.S.C. §§ 551(1) and 552(f).

<u>**Factual Allegations**</u>

**The Iraqi Refugee Humanitarian Crisis**

12.     According to the United Nations, up to 4.8 million Iraqis have been displaced since U.S.–led coalition forces invaded Iraq in March 2003, making them one of the largest urban refugee populations the international community has ever encountered.  An estimated 2 million refugees have fled to neighboring countries—primarily Syria and Jordan—while millions more are internally displaced within Iraq.

Ongoing violence and military conflict prevent refugees from returning to their homes. According to UNHCR, conditions in Iraq are not suitable for Iraqi refugees to return.

13.    The Iraqi refugees face precarious, life-threatening situations in their host countries. Denied the right to work, they are forced to subsist on dwindling savings. With no present income, some are forced to sell their food ration cards to survive. Due to limited access to social services, many families do not have sufficient food or health care. Children cannot easily attend school. Religious minorities continue to be persecuted. *See* Sabrina Tavernise, *Well-Off Fleeing Iraq Find Poverty and Pain in Jordan*, N.Y. TIMES (Aug. 10, 2007), *available at* http://www.nytimes.com/2007/08/10/world/ middleeast/10refugees.html?pagewanted=1.

14.    The admission of Iraqi refugees into the United States has been a topic of significant public debate. Numerous accounts have documented the plight of Iraqi refugees and the need for increased U.S. and international assistance. *See, e.g.*, United States Government Accountability Office [GAO], *Iraqi Refugee Assistance: Improvements Needed in Measuring Progress, Assessing Needs, Tracking Funds, and Developing an International Strategic Plan*, GAO-09-120 (April 2009) ("GAO Report"); Int'l Rescue Committee [IRC], *Five Years Later, A Hidden Crisis: Report of the IRC Commission on Iraqi Refugees*, March 2008, *available at* http://www.theirc.org/resource-file/irc-commission-iraq-report; Spencer S. Hsu, *Envoy Urges Visas for Iraqis Aiding U.S.; Targets of Violence Are Seeking Refuge*, WASH. POST (July 22, 2007), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/07/21/ AR2007072101359.html. Prior to 2007, the United States reportedly had admitted fewer

than 1,000 Iraqi refugees since the start of the Iraq war. Since then, the United States has

recognized the need for it to take the lead in addressing this humanitarian crisis, due to its

unique role in Iraq, *see* GAO Report at 1, and the number of Iraqi refugees admitted to

the United States has markedly increased. Nevertheless, the United States has struggled

to address the huge unmet demand of thousands more Iraqi refugees. In 2007, the United

States admitted 1,608 Iraqi refugees out of 11,646 applicants, failing to meet DOS's

expectation of resettling 2,000 to 3,000 refugees. In 2008, 13,823 refugees out of 28,886

applicants were accepted for resettlement. GAO Report at 31. Moreover, of those

accepted for resettlement, more than half of them have not left for the United States, as

they still await security clearances. *Id.* at 33 n.57.

**The Kennedy Act**

15.    In an effort to further increase the number of Iraqi refugees admitted to the

United States, Congress passed the Refugee Crisis in Iraq Act of 2007, commonly

referred to as the Kennedy Act, which was signed into law on January 28, 2008. The

Kennedy Act expanded the number of SIVs available for interpreters. It also designated

Iraqis who were or are employed by U.S.-based media companies or NGOs, or U.S.-

funded organizations, and members of persecuted religious or minority communities, as

identified by the Secretary of State, as eligible for Priority 2 (P2) processing, which

would allow them to bypass a lengthy referral process. Further, it empowered the

Secretary of State to identify other Iraqi groups to qualify for P2 processing. The

Kennedy Act also mandated that the Departments of State and Homeland Security,

among others, submit to Congress several reports regarding the implementation of the Act.

16.    Despite these reporting requirements, the Defendants have not publicly produced a clear description of the processes and parties involved.  DOS officials have stated that "every case moves through USRAP at a different pace and can be delayed at any step along the way," and that serious delays may occur as a result of security clearance procedures.  GAO Report at 33.  Moreover, performance measures to gauge the Defendants' progress in meeting the broad goals of protecting and assisting Iraqi refugees are lacking, as is a "comprehensive international strategy to address the Iraqi refugee situation."  GAO Report at 5, 10.

17.    Meanwhile, Iraqi refugees have reported extensive processing delays, conflicting instructions from government officials and opaque proceedings, resulting in unduly stressful admission interviews and much frustration and uncertainty in their efforts to be resettled in the United States.  The former U.S. Ambassador to Iraq, Ryan C. Crocker, even recognized that the process is unduly lengthy.  Spencer S. Hsu & Robin Wright, *Crocker Blasts Refugee Process*, WASH. POST (Sept. 17, 2007), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/09/16/ AR2007091601698.html.

**The Requested Information**

18.    The information subject to IRAP's FOIA requests is listed in Exhibits A and D hereto.

19.     Upon information and belief, Defendants DOS, DHS and USCIS are in possession of records relating to the procedures used to process refugees.  The records requested directly relate to IRAP's mission to alleviate the humanitarian crisis in Iraq by helping individual refugees.  The disclosure of the requested documents will help to inform the public of this vital information, to ensure compliance with the statutory mandates set forth in the Kennedy Act and to achieve greater clarity and efficiency in the processing of future applicants for refugee status.  The information is also essential to aiding specific individuals and families that IRAP members are currently assisting, whose lives may depend on the fair and expeditious processing of their applications.

20.     The Kennedy Act required Defendants DOS and DHS to produce numerous reports, including:

- A report describing the Secretary of State's plans to establish processing mechanisms, assessing the use of videoconferencing for in-country processing and detailing diplomatic efforts to improve issuance of exit permits to Iraqis who have either been provided special immigrant status or have been defined as refugees;

- A report by the Secretary of Homeland Security containing plans to expedite the processing of refugees for resettlement, including through the temporary expansion of USCIS, to increase in the number of DHS personnel on the ground in the host countries and to enhance existing systems for conducting background and security checks, as well as a

projection of the number of interviews to be conducted, per country and per month.

IRAP has been unable to obtain these reports through publicly-available means. IRAP therefore requested these statutorily-mandated reports, as well as any other records detailing the Defendants' implementation of the Kennedy Act.

21.     The provision of these records would directly impact the ability of IRAP to assist and advocate for Iraqi refugees, helping to clarify the cumbersome and opaque refugee admissions process. In addition, these records would allow IRAP to hold Defendants to account for their obligations under the Kennedy Act to speed up and increase the number of Iraqi refugees admitted to the United States.

22.     IRAP also requested various records intended to help better understand the processing of Iraqi refugees, including:

- Records detailing the procedures used to process applications for refugee status and requests for reconsiderations of denials of refugee status;

- Records describing the Secretary of State's procedures for identifying and approving new groups eligible for P2 status;

- Training materials for employees and contractors of the Defendant agencies;

- Contracts and other materials relating to the International Organization for Migration ("IOM"), and other NGOs to whom the Defendants have outsourced the processing of refugees;

- Records detailing the referral process between the IOM and DOS, as well as the direct referral process by NGOs;

- Records concerning the process of resettlement and the performance of Voluntary Legal Agencies ("VOLAG") and VOLAG sub-agencies;

- Records detailing record-keeping procedures for individual refugee applicants; and

- Records pertaining to security check procedures of Iraqi resettlement applicants.

23.    These records would similarly enable IRAP to better assist Iraqi refugees in their efforts to emigrate to the United States.  For example, among the refugees that IRAP assists is a family with a child, paralyzed by a tumor on his spine and in need of life-saving surgery.  Its application for resettlement, however, was rejected.  While the rejection letter stated that the family could submit a request for reconsideration within 90 days, it did not specify the procedures required to submit such a request; it did not indicate where to send the request for reconsideration nor what format the request should take.  On information and belief, this information is not publicly available and there are

no clear standards or criteria used to adjudicate requests for reconsideration.  It is not even known who adjudicates such requests.

24.     Another example is an Iraqi refugee family that was resettled in the United States, but forced to live off the charity of a private citizen because it was unaware of and unassisted by its assigned resettlement agency.  Due to a lack of publicly available information on how resettlement cases are supposed to be handled by the assigned VOLAG and the benefits to which an Iraqi refugee is entitled, it is exceedingly difficult for IRAP to adequately assist refugees who have arrived in the United States.

**FOIA Requirements**

25.     An agency is required to respond to a FOIA request within twenty working days after receipt of the request.  5 U.S.C. § 552(a)(6)(A)(i).  The agency's response must include its determination as to whether it will comply with the request and the reasons for that determination, along with notice of the requestor's right to appeal an adverse decision to the head of the agency.  *Id*.  Mere acknowledgment of a request does not constitute a response under FOIA.  *See FOIA Update*, Vol. XIII, No. 3 at 5, *available at* http://www.justice.gov/oip/foia_updates/ Vol_XIII_3/page_3.htm.  Under unusual circumstances, agencies may take an additional ten working days to fulfill its statutory obligations, upon written notice to the requestor.  5 U.S.C. § 552(a)(6)(B)(i).

26.     Agencies must expedite processing of FOIA requests "(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i).  A compelling need means

"(I) that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). *See also* 6 C.F.R. § 5.5(d)(1); 22 C.F.R. § 171.12(b). DOS has additionally determined that a compelling need exists where "[f]ailure to obtain requested information on an expedited basis could reasonably be expected to . . . impair substantial due process rights; or harm substantial humanitarian interests." 22 C.F.R. § 171.12(b)(1).

27.    Agencies must determine whether to grant expedited processing, and provide notice of such a determination, within ten calendar days of such a request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

28.    Agencies are also required to reduce or waive fees when disclosure of the requested information "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). *See also* 6 C.F.R. § 5.11(k).

29.    If an agency fails to respond within the time limits set in 5 U.S.C. § 552(a)(6), the requestor "shall be deemed to have exhausted his administrative remedies" and may seek judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

30.    Upon receipt of a complaint, the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency

records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). It may also review "[a]gency action to deny or affirm denial of a request for expedited processing" or an agency's failure to respond to a request for expedited processing in a timely manner, 5 U.S.C. § 552(a)(6)(E)(iii), and it may determine issues regarding fee waivers. 5 U.S.C. § 552(a)(4)(A)(vii).

**FOIA Request to Department of Homeland Security (DHS)**

31.    By letter dated March 12, 2009, IRAP submitted a FOIA request for records relating to the processing of Iraqi refugees and SIV applicants to the DHS Privacy Office and the USCIS FOIA/Privacy Act Office. A copy of that letter is attached as Exhibit A hereto.

32.    In a letter to IRAP dated April 2, 2009, DHS indicated that the request was received on March 24, 2009 and assigned it the reference DHS/OS/PRIV 09-411 for communications with the DHS Privacy Office. DHS stated that the requested records were likely in the possession of USCIS. Because IRAP's original request was already directed to the USCIS FOIA/Privacy Act Office, DHS did not make an additional referral. DHS further stated that records may be in the possession of the DHS Office of Policy (PLCY) and that Plaintiff's request was forwarded to that office to directly respond to IRAP's requests. DHS did not notify Plaintiff that it intended to take an additional ten working days pursuant to 5 U.S.C. § 552(a)(6)(B)(i). This letter was signed by Vania Lockett, Associate Director, Disclosure & FOIA Operations, DHS. A copy of that letter is attached as Exhibit B hereto.

33.     DHS has not corresponded with IRAP since the April 2, 2009 letter.

34.     DHS PLCY did not respond to IRAP's request for expedited processing.

35.     DHS PLCY did not respond to IRAP's request for a fee waiver.

36.     DHS PLCY has never corresponded with IRAP.

37.     To date, DHS has not responded to IRAP's FOIA request, nor has it provided the requested records.

38.     By letter dated April 23, 2009, IRAP submitted an administrative appeal to DHS to address the agency's failure to provide a response within twenty working days, as well as to respond to IRAP's requests for expedited processing and fee waivers.  A copy of that letter is attached to this complaint as Exhibit C hereto.

39.     IRAP has not received a reply from DHS.

40.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Defendant DHS's failure to respond to IRAP's request within the statutorily prescribed twenty days constitutes a constructive exhaustion of IRAP's administrative remedies with respect to its DHS FOIA request.

**FOIA Request to U.S. Citizenship and Immigration Services (USCIS)**

41.     By letter dated March 12, 2009, IRAP submitted a FOIA request for records relating to the processing of Iraqi refugees and SIV applicants to the USCIS FOIA/Privacy Act Office.  *See* Exhibit A.

42.     USCIS has not acknowledged receipt of IRAP's request.

43.    USCIS did not notify Plaintiff that it intended to take an additional ten working days pursuant to 5 U.S.C. § 552(a)(6)(B)(i).

44.    USCIS did not respond to IRAP's request for expedited processing.

45.    USCIS did not respond to IRAP's request for a fee waiver.

46.    To date, USCIS has not responded to IRAP's FOIA request, nor has it provided the requested records.

47.    By letter dated April 23, 2009, IRAP submitted an administrative appeal to USCIS to address the agency's failure to provide a response within twenty working days, as well as to respond to IRAP's requests for expedited processing and fee waivers. *See* Exhibit C.

48.    IRAP has not received a reply from USCIS.

49.    Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Defendant USCIS's failure to respond to IRAP's request within the statutorily prescribed twenty days constitutes a constructive exhaustion of IRAP's administrative remedies with respect to its USCIS FOIA request.

**FOIA Request to Department of State (DOS)**

50.    By letter dated February 19, 2009, IRAP submitted to DOS a FOIA request for various "agency records related to the processing of Iraqi refugees and Special Immigrant Visa applicants, including Internally Displaced Persons, from April 1, 2003 to the present." A copy of that letter is attached as Exhibit D hereto.

51.     In a letter dated March 13, 2009, forwarded to Plaintiff by State Department official John A. Parker on April 2, 2009, Acting Chief of the Requester Communications Branch Patrick D. Scholl acknowledged receipt of Plaintiff's request, assigned case number 200901707 to the request, confirmed that processing of the request had begun and denied IRAP's request for both expedited processing and a fee waiver. A copy of that letter is attached as Exhibit E hereto.

52.     DOS did not notify Plaintiff that it intended to take an additional ten working days pursuant to 5 U.S.C. § 552(a)(6)(B)(i).

53.     By letter dated April 23, 2009, IRAP submitted an administrative appeal to DOS to address the agency's failure to provide a response within twenty working days. A copy of that letter is attached as Exhibit F hereto.

54.     In a letter dated May 4, 2009, DOS wrote that IRAP's FOIA request was not subject to administrative appeal because no specific material of the request had been denied. The letter also stated that the request was being processed, but did not indicate whether or when the records would be provided. This letter was signed by E. Ray McLaughlin, Office of Information Programs and Services, DOS. A copy of that letter is attached as Exhibit G hereto.

55.     In a letter dated November 2, 2009, IRAP confirmed its willingness to pay the fees associated with its DOS request, subject to reviewing DOS's final cost estimate, as it recognized that the time to appeal DOS's denial of its fee waiver request had expired, and it did not wish to hold up the processing of its request. A copy of that letter is attached as Exhibit H hereto.

56.    To date, DOS has not responded to IRAP's FOIA request, nor has it provided the requested records

57.    Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Defendant DOS's failure to respond to IRAP's request within the statutorily prescribed twenty days constitutes a constructive exhaustion of IRAP's administrative remedies with respect to its DOS FOIA request.

## COUNT ONE
### (Injunctive relief as to Defendants DHS, USCIS and DOS)

58.    IRAP repeats and re-alleges each and every allegation contained in paragraphs 1 through 57 as if repeated and reincorporated herein.

59.    Defendants' failure to respond to IRAP's FOIA requests within twenty days has denied IRAP its right to timely access to agency documents and records under 5 U.S.C. § 552(a)(3)(A).

## COUNT TWO
### (Expedited Processing as to Defendants DHS, USCIS and DOS)

60.    IRAP repeats and re-alleges each and every allegation contained in paragraphs 1 through 57 as if repeated and reincorporated herein.

61.    IRAP's requests for expedited processing in its letters dated February 19 and March 12, 2009, demonstrated the compelling need for the requested information to facilitate efforts of Iraqi refugees to escape the humanitarian crisis created by the life-threatening conditions in which they live.

62.    Defendant DOS's denial of IRAP's request for expedited processing was in error.  DOS has denied IRAP its right to expedited processing under 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.12(b).

63.    Defendants DHS and USCIS never responded to IRAP's request for expedited processing, in breach of 5 U.S.C. § 552(a)(6)(E)(ii)(I).

## COUNT THREE
### (Fee Waiver as to Defendants DHS and USCIS)

64.    IRAP repeats and re-alleges each and every allegation contained in paragraphs 1 through 57 as if repeated and reincorporated herein.

65.    In its letter dated March 12, 2009, IRAP requested a fee waiver and demonstrated how its requested information was likely to contribute significantly to public understanding of the operations or activities of the government, not least because the requests included statutorily required reports that have not been made public.

66.    Defendants DHS and USCIS have failed to respond to IRAP's March 12, 2009, request for a fee waiver.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1)    Order Defendants to disclose the requested records in their entireties and to make copies available to IRAP;

2)    Set a schedule for Defendants to produce the requested records;

3)    Order Defendants to expedite processing of IRAP's FOIA requests;

4)    Order Defendants DHS and USCIS to waive processing fees;

5)    Order that Defendants not asses search fees pursuant to 5 U.S.C. §
552(a)(4)(A)(viii) for failing to meet the deadlines set forth in 5 U.S.C. §§
552(a)(6)(A)(i) and 552(a)(6)(E)(ii)(I);

6)    Award IRAP costs and reasonable attorneys' fees in this action as
provided by 5 U.S.C. § 552(a)(4)(E); and

7)    Grant such other relief to IRAP as the Court deems appropriate.


Dated: December 7, 2009
       New York, New York

                                   DEBEVOISE & PLIMPTON LLP


                                   By: ___/s/ Jyotin Hamid_____
                                        Jyotin Hamid
                                        (jhamid@debevoise.com)
                                        Corey S. Whiting
                                        (cwhiting@debevoise.com)
                                        Lauren M. Weiner
                                        (lweiner@debevoise.com)
                                   919 Third Avenue
                                   New York, New York 10022
                                   Tel: (212) 909-6000
                                   Fax: (212) 909-6836

                                   Douglas Lasdon (dlasdon@urbanjustice.org)
                                   URBAN JUSTICE CENTER
                                   123 William Street 16th Floor
                                   New York, New York 10012
                                   Tel: (646) 602-5600
                                   Fax: (212) 533-4598

                                   *Attorneys for Plaintiff Iraqi Refugee Assistance
                                   Project*

Exhibit A

# IRAQI REFUGEE ASSISTANCE PROJECT
## — YALE—LAW—SCHOOL —

March 12, 2009

U.S. Department of Homeland Security
Privacy Office
Director, Disclosure & FOIA
245 Murray Drive SW, Building 410
STOP-0550
Washington, DC 20528-0550
FOIA Officer: Catherine M. Papoi, J.D., CIPP/G
FOIA Requester Service Center Contact:  Vania T. Lockett, CIPP/G


U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO 64064-8010
FOIA Officer/Requester Service Center Contact:  Patricia Keltner

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

This letter constitutes an expedited request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Homeland Security on behalf of the Iraqi Refugee Assistance Project of Yale Law School and NYU School of Law ("IRAP").

We are requesting  the following records related to the processing of Iraqi refugees and Special Immigrant Visa applicants, including Internally Displaced Persons, from April 1, 2003 to the present:

- The following records relating to the implementation of the provisions of the Kennedy legislation, PUBLIC LAW 110–181—JAN. 28, 2008, the "Refugee Crisis in Iraq Act of 2007", including, but not limited to:
  - The report mandated by § 1242(c), which describes the Secretary of Homeland Security's plan to establish the processing mechanisms required by § 1242(a) and suspension of processing mechanism required by § 1242(b); contains an assessment of in-country processing that makes use of videoconferencing; and describes the Secretary of Homeland Security's diplomatic efforts to improve issuance of exit permits to Iraqis who have been provided special immigrant status under § 1244 and Iraqi refugees under § 1243;
  - Records relating to individuals in conflict with the Department of the Treasury's list of Specially Designated Nationals or any entity excluded by the Secretary of Homeland Security under § 1243(c);
  - Records relating to the President's consultation with nongovernmental organizations mandated by § 1243(e);
  - Records relating to the Secretary of Homeland Security's efforts, mandated by § 1244(d), to ensure that aliens described in § 1244 who are issued special immigrant visas are provided

with the appropriate series Iraqi passport necessary to enter the United States;

- The report, mandated by § 1248(a), containing plans to expedite the processing of Iraqi refugees for resettlement;

- The unclassified report, mandated by § 1248(b);

- The report, mandated by § 1248(c), on Iraqi citizens and nationals employed by the United States government or federal contractors in Iraq;

- The report, mandated by § 1248(d), on establishment of databases;

- The noncompliance report, mandated by § 1249(e);

- Records explaining the internal process for identifying and confirming new P-2 categories; and

- Records relating to the decision to exclude UN and IOM workers from the Kennedy legislation's P-2 categories.

- Records detailing procedures for identifying and approving new groups eligible for Priority-2 ("P-2") processing;

- Records relating to DHS interviews of Iraqi refugees, including, but not limited to:

  - Records detailing DHS interviewer training procedures; and

  - Records explaining the recording and transcribing protocol for DHS interviews of Iraqi refugees.

- All records relating to the process of adjudicating Requests for Review ("RFRs") ofdenials of eligibility for refugee status, including, but not limited to:

  - Protocol for the process of adjudicating requests for review; and

  - Records providing guidance and/or outlining policy on how and when to review a denial of eligibility; and

  - Records providing guidance and/or outlining policy on how and when to overturn a denial of eligibility.

  -

- Records containing statistics or other data related to location of SIV consular interviews and departure country;

- Records, containing statistics or other data, relating to waivers of G-passport requirements for successful SIV applicants;

- Records pertaining to contracts between the Department of Homeland Security and the International Organization for Migration regarding any work in Jordan, Lebanon, Egypt, Iraq or Syria, including, but not limited to:

  - The U.S. government contracts with IOM to serve as Overseas Processing Entity;

  - Protocol defining the role of IOM in making referrals to DHS;

  - Records detailing IOM interviewer training procedures; and

  - Records detailing IOM interpreter training procedures.

- Records related to IOM Baghdad refugee processing procedures, including, but not limited to:
  - Records relating to processing times at IOM Baghdad;
  - Records detailing processing procedures at IOM Baghdad;
  - Records on how many individuals initiate contact with IOM for refugee resettlement, how many are approved, how many are denied, and how many do not continue the process to a final determination;
  - Records relating to plans to expand the processing capacity of IOM Baghdad;
  - Records relating to physical and geographic access to the IOM Baghdad Office (including records detailing how Iraqi refugees will have access to the Green Zone in order to get to the IOM Office, and how Iraqi refugees outside of Baghdad can get access to the office);
  - Reports submitted by IOM Baghdad to any U.S. government agency;
  - Records of any audits by U.S. agencies of IOM Baghdad's performance; and
  - Records of revisions or supplements to the IOM Baghdad contract.

- Records pertaining to the practice of direct referrals by non-profit organizations to IOM, as mandated by the Foreign Affairs Manual, 9 FAM Appendix O, 602.2-1, Persons Identified by Nongovernmental Organizations, CT: VISA-867; 03-20-200, including, but not limited to:
  - Records informing and implementing the decision to interpret the Foreign Affairs manual as requiring a training session before a non-profit organization can make a referral;
  - Training materials for non-profit organizations who wish to make direct referrals to IOM;
  - Records containing statistics or other information about the number of trainings and resulting referrals from non-profits trying to make direct referrals;
  - Identification of the non-profits who have made such referrals; and
  - Records relating to outreach efforts to alert non-profits about this option.

- The following records related to resettlement services delivered through VOLAGs and VOLAG sub-agencies to resettled Iraqi refugees:
  - Records related to the process of review of resettlement services delivered through VOLAGs and their sub-agencies;
  - Records on the performance of VOLAGs and their sub-agencies in the delivery of resettlement services;
  - Communication between the DHS and VOLAGs, including, but not limited to, training materials, emails, letters, memoranda of understanding, and other information; and
  - Contracts with the following 10 VOLAGs: Church World Service, Ethiopian Community Development Council, Episcopal Migration Ministries, Hebrew Immigrant Aid Society, International Rescue Committee, U.S. Committee for Refugees and Immigrants, Lutheran Immigration and Refugee Service, United States Conference of Catholic Bishops, World Relief, State of Iowa – Bureau of Refugee Services.

- Records detailing record-keeping procedures for individual refugee files.

- Records of agreements between the United States and Third Party countries relating to the admission of Iraqi refugees, including, but not limited to, Jordan, Lebanon, Egypt, Syria, Iraq,

Australia, Canada, Switzerland, Finland and the United Kingdom.

- Records related to security check procedures of Iraqi resettlement applicants, including, but not limited to:
  - Records indicating the agencies that are required to give approval during a security check;
  - Guidance or memoranda on internal deadlines of each agency for completing the check;
  - Statistics or other information related to the percentage of security checks processed within those deadlines;
  - Statistics or other information related to the percentage of security checks processed within the total inter-agency deadline of 45 days;
  - Guidance or memoranda dictating the order in which the various agencies process security checks;
  - Guidance or memoranda describing procedures for internal review provided (or lack thereof) if an applicant comes up as a possible security risk;
  - Records relating to processing times for background checks for Iraqi asylum-seekers;refugee applicants, and SIV petitioners; and
  - Names of any and all private contractors used to conduct any portion of the security check.

- All records, including guidance, memoranda, and reports, documenting efforts to expedite Iraqi refugee processing in order to comply with the FY 2008 and 2009 targets;

- 

- Data definition records for the database(s) that contain records regarding Iraqi refugee interviews and resettlement application information.

- Records, including any manuals, for the database(s) that contains records regarding Iraqi refugee interviews and resettlement application information.


**Request for Expedited Processing**

The following constitutes a statement in support of our request for expedited processing pursuant to 6 C.F.R. § 5.5(d). This request warrants expedited processing because it involves "[c]ircumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 6 C.F.R. § 5.5(d)(1).

Since 2003, the Iraq war has displaced up to 5 million people and left more than two million Iraqi refugees stranded in Syria, Jordan and other neighboring countries. Denied basic freedoms such as the right to work and unable to return to their homes because of ongoing violence, refugees struggle to subsist on dwindling savings. While some hope for a better life in the West, very few have been resettled - the United States will take in about 17,000 Iraqi refugees this year, a tiny fraction of those in need. Other countries are accepting even fewer. The result is perhaps the gravest humanitarian crisis facing the region in more than half a century. Many Iraqis have been waiting for years in extremely urgent and life-threatening situations for a chance to be resettled in the United States. Because it is illegal for them to work in their current countries of residence, they slowly eat through any savings they

may have had. Many children cannot go to school and families cannot afford sufficient food or health care. Religious minorities continue to be persecuted, women are forced to become sex workers and locals take advantage of vulnerable populations. The ongoing threats to individuals who are in the position of our clients have been well-substantiated in the press and are widely recognized. *See, e.g.* Sabrina Tavernise, W*ell-Off Fleeing Iraq Find Poverty and Pain in Jordan,* N.Y. Times (Aug. 10, 2007).

We are requesting the above information to help individual clients whose lives depend on it, as well as to attempt to address the overall crisis in processing. Failure to obtain the information we request on an expedited basis will therefore "pose an imminent threat to the life [and] physical safety" of thousands of Iraqi refugees, including current and future clients of IRAP. 6 C.F.R. § 5.5(d)(1).

**Request for a Public Interest Fee Waiver**

IRAP requests a waiver of fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii)(II), (a)(4)(A)(iii) and 6 C.F.R. § 5.11. To determine whether a request meets this standard, the Department of Homeland Security considers whether the information is likely to contribute significantly to public understanding of the operations or activities of the Government and if it is not primarily in the commercial interest of the requester. 6 C.F.R. § 5.11.

This request clearly satisfies these criteria. The subject of the requested records concerns the operations and activities of the U.S. Department of Homeland Security in its processing of Iraqi refugees, its interaction with private agencies in these operations, and its implementation of federal law (the "Refugee Crisis in Iraq Act of 2007"). "As such, it is directly related to the operations and activities of government." 6 C.F.R. § 5.11(k)(2)(i).  Disclosure of this information is "likely to contribute" to t"public understanding" of such operations and activities. 6 C.F.R. § 5.11 (k)(2)(ii)-(iii); *see* Sabrina Tavernise and David Rohde*, Few Iraqis Reach Safe U.S. Havens Despite Program,* N.Y. Times (Aug. 29, 2007) (demonstrating public news media interest in this topic, and describing a number of unanswered questions pertaining to Iraqi refugees – such as the official number of fast-track applicants – which this request might be able to answer).

IRAP is a student organization within Yale Law School, a graduate school within Yale University, which has § 501(c)(3) non-profit tax status, and has no commercial interest in the disclosure of the requested records. 6 CFR § 5.11 (k)(2). As part of an educational institution, IRAP is entitled to, at the very least, a complete waiver of search fees. 6 C.F.R. § 5.11(d)(1).


 If this request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the Act.  In addition, please release all segregable portions of otherwise exempt material.  Please provide all materials and records in electronic format, if they are so available. We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees. Pursuant to the applicable statutory provision and Department regulations, we expect a response within the ten (10) day statutory time limit. 6 CFR § 5.5(d)(4). If you have any questions in processing this request, we can be contacted by mail at the address above or by telephone at (203) 432-4800..

Thank you for your assistance in this matter.

Sincerely,

Jonathan Finer, Rebecca Heller and Adrienna Wong
The Iraqi Refugee Assistance Project
Yale Law School
127 Wall Street
New Haven, CT 06510

Sally Newman, Alice Nascimento and Jinyoung Choi
The Iraqi Refugee Assistance Project
New York University School of Law
D'Agostino Hall, RLSC Office
110 West Third Street, Subbasement
New York, NY 10012

Ian Kysel
Georgetown Law School
600 New Jersey Ave, NW
Washington, DC 20001

Jennifer Rikoski
Ropes and Gray
One International Place
Boston, MA 02110

Exhibit B

U.S. **Department of Homeland Security**
Washington, DC 20528

 **Homeland Security**

*Privacy Office, Mail Stop 0655*

April 2, 2009

Ms. Adrienna Wong and Rebecca Heller
Mr. Jonathan Finer
The Iraqi Refugee Assistance Project
Yale Law School
127 Wall Street
New Haven, CT 06510

Re: **DHS/OS/PRIV 09-411**

Dear Ms. Wong and Ms. Heller and Mr. Finer:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS) and its component, U.S. Citizenship and Immigration Services (USCIS), dated March 16, 2009, and seeking records related to the processing of Iraqi refugees and Special Immigrant Visa applicants, including Internally Displaced Persons, from April 1, 2003 to the present. Your request was received in this office on March 24, 2009.

Upon initial review of your request, I have determined that the information you are seeking, if it exists, is likely under the purview of USCIS. As your request was already directed to USCIS, I will not refer your request to that component.

I also determined that, if such records exist, they may be under the purview of the DHS Office of Policy (PLCY). Accordingly, I am referring your request to the Acting FOIA Officer for PLCY, Sean McAfee, for processing and direct response to you. You may contact that office by writing to U.S. Department of Homeland Security, Office of Policy, Washington, D.C. 20528, via telephone at 202-282-8036, or via e-mail at plcy.execsec@dhs.gov. That office will respond directly as it relates to your requests for expedited processing and a waiver of fees.

If there are any other DHS components that you would like us to search, please advise this office in writing. A list of DHS components and offices may be found at:
http://www.dhs.gov/xabout/structure/index.shtm.

If you need to contact this office again concerning your request, please refer to **DHS/OS/PRIV 09-411**. This office can be reached at 866-431-0486.

Sincerely,

Vania T. Lockett
Associate Director, Disclosure & FOIA Operations

Sally Newman, Alice Nascimento
and Jinyoung Choi
The Iraqi Refugee Assistance Project
New York University School of Law
D'Agostino Hall, RLSC Office
110 West Third Street, Subbasement
New York, NY 10012

Ian Kysel
Georgetown Law School
600 New Jersey Ave., NW
Washington, DC 20001

Jennifer Rikowski
Ropes and Gray
One International Place
Boston, MA 02110

Exhibit C



ROPES & GRAY LLP
ONE INTERNATIONAL PLACE
BOSTON, MA 02110-2624
WWW.ROPESGRAY.COM

## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

April 23, 2009

Associate General Counsel (General Law)
Department of Homeland Security
Washington, DC 20528

USCIS FOIA/PA Appeals Office
150 Space Center Loop, Suite 500
Lee's Summit, MO 64064-2139

*Freedom of Information Act appeal*
*Re:* DHS/OS/PRIV 09-411

Dear Sir or Madam:

This letter constitutes an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, regarding a request to the Department of Homeland Security (DHS) Privacy Office and the U.S. Citizen and Immigration Services (USCIS) FOIA/Privacy Act Office for records related to the processing of Iraqi refugees and Special Immigrant Visa applicants, including internally displaced persons, from April 1, 2003 to the present. *See* Attachment A. The Iraqi Refugee Assistance Project filed this request by certified mail on March 13, 2009. *See* Attachment B.

In a letter to IRAP dated April 2, 2009, DHS indicated that our request was received on March 24, 2009 and had been referred to the DHS Office of Policy (PLCY). *See* Attachment C. According to the letter, DHS determined that USCIS was also an appropriate component for the information we requested, but it did not make an additional referral because our original request was sent to both USCIS and DHS. This letter is the only response IRAP has received from DHS, PLCY, and USCIS regarding our March 13th FOIA request. None of DHS, PLCY, or USCIS has produced any responsive records.

Under 5 U.S.C. § 552(a)(6)(A)(i), an agency has twenty working days to respond to a FOIA request. *See also* 6 C.F.R. § 5.5. More than twenty working days have passed since our initial request was received by DHS and forwarded by DHS to PLCY. Additionally, more than twenty days have passed since USCIS received our request. We thus appeal DHS and its components' constructive denials. We ask that DHS, PLCY, and USCIS provide us with (1) records responsive to our request and (2) a determination as to our request for expedited processing and fee waivers.

ROPES & GRAY LLP

Associate General Counsel                    -2-                    April 23, 2009
USCIS FOIA/PA Appeals Office

We look forward to receiving your decision on this appeal.  If you have any questions, you may
contact me at (617) 951-7354 or jennifer.rikoski@ropesgray.com.

Sincerely,

Jennifer A. Rikoski
Attorney for the Iraqi Refugee Assistance Project

Enclosures

cc:    Scott Anderson, IRAP Yale
       Jonathan Finer, IRAP Yale
       Rebecca Heller, IRAP Yale
       Stephen Poellet, IRAP Yale
       Adrienna Wong, IRAP Yale
       Jinyoung Choi, IRAP NYU
       Alice Nascimento, IRAP NYU
       Sally Newman, IRAP NYU
       Ian Kysel, Georgetown Law School

11848500_1.DOC

# Exhibit D

# IRAQI REFUGEE ASSISTANCE PROJECT
## YALE—LAW—SCHOOL

February 19, 2009

Office of Information Programs and Services
A/ISS/IPS
Department of State, SA-2
Washington, DC 20522-8001

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

This letter constitutes an expedited request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the U.S. Department of State on behalf of the Iraqi Refugee Assistance Project of Yale Law School ("IRAP").

We are requesting the following agency records related to the processing of Iraqi refugees and Special Immigrant Visa applicants, including Internally Displaced Persons, from April 1, 2003 to the present:

- The following records relating to the implementation of the provisions of the Kennedy legislation, PUBLIC LAW 110–181—JAN. 28, 2008, the "Refugee Crisis in Iraq Act of 2007":
    - The report mandated by § 1242(c), which describes the Secretary of State's plans to establish the processing mechanisms required by § 1242(a), contains an assessment of in-country processing that makes use of videoconferencing, and describes the Secretary of State's diplomatic efforts to improve issuance of exit permits to Iraqis who have been provided special immigrant status under § 1244 and Iraqi refugees under §1243;
    - Records relating to the President's consultation with nongovernmental organizations mandated by § 1243(e);
    - Records relating to the Secretary of State's efforts, mandated by § 1244(d), to ensure that aliens described in § 1244 who are issued special immigrant visas are provided with the appropriate series Iraqi passport necessary to enter the United States;
    - Records relating to the implementation of § 1244(e), which requires the Secretary of State to provide an alien described in § 1244 who is applying for a special immigrant visa with protection or to arrange for the immediate removal from Iraq, if possible, of such alien if the Secretary determines after consultation that such alien is in imminent danger;
    - The report, mandated by § 1248(a), containing plans to expedite the processing of Iraqi refugees for resettlement;
    - The unclassified report, mandated by § 1248(b);
    - The report, mandated by § 1248(c), on Iraqi citizens and nationals employed by the United States government or federal contractors in Iraq;
    - The report, mandated by § 1248(d), on establishment of databases;
    - The noncompliance report, mandated by § 1249(e);
    - Records explaining the internal process for identifying and confirming new P-2 categories; and

- Records relating to the decision to exclude UN and IOM workers from the Kennedy legislation's P-2 categories.

- Records detailing procedures for identifying and approving new groups eligible for Priority-2 ("P-2") processing;

- Records containing statistics or other data related to location of SIV consular interviews and departure country;

- Records, containing statistics or other data, relating to waivers of G-passport requirements for successful SIV applicants;

- Records pertaining to contracts between the Department of State and the International Organization for Migration regarding any work in Jordan, Lebanon, Egypt, Iraq or Syria, including, but not limited to:
  - The U.S. government contracts with IOM to serve as Overseas Processing Entity;
  - Records detailing IOM interviewer training procedures; and
  - Records detailing IOM interpreter training procedures.

- Records related to IOM Baghdad refugee processing procedures, including, but not limited to:
  - Records relating to processing times at IOM Baghdad;
  - Records detailing processing procedures at IOM Baghdad;
  - Records relating to plans to expand the processing capacity of IOM Baghdad;
  - Records relating to physical and geographic access to the IOM Baghdad Office (including records detailing how Iraqi refugees will have access to the Green Zone in order to get to the IOM Office, and how Iraqi refugees outside of Baghdad can get access to the office).
  - Reports submitted by IOM Baghdad to any U.S. government agency;
  - Records of any audits by U.S. agencies of IOM Baghdad's performance;
  - Records of revisions or supplements to the IOM Baghdad contract.

- Records pertaining to the practice of direct referrals by non-profit organizations to IOM, as mandated by the Foreign Affairs Manual, 9 FAM Appendix O, 602.2-1 Persons Identified by Nongovernmental Organizations, CT: VISA-867; 03-20-200, including, but not limited to:
  - Records informing and implementing the decision to interpret the Foreign Affairs manual as requiring a training session before a non-profit organization can make a referral;
  - Training materials for non-profit organizations who wish to make direct referrals to IOM
  - Records containing statistics or otherinformation about the number of trainings and resulting referrals from non-profits trying to make direct referrals;
  - Identification of the non-profits who have made such referrals;
  - Records relating to outreach efforts to alert non-profits about this option.

- The following records related to resettlement services delivered through VOLAGs and VOLAG sub-agencies to resettled Iraqi refugees:

- ◦ Records related to the process of review of resettlement services delivered through VOLAGs and their sub-agencies; and
- ◦ Records on the performance of VOLAGs and their sub-agencies in the delivery of resettlement services.
- ◦ Contracts with the following 10 VOLAGs: Church World Service, Ethiopian Community Development Council, Episcopal Migration Ministries, Hebrew Immigrant Aid Society, International Rescue Committee, U.S. Committee for Refugees and Immigrants, Lutheran Immigration and Refugee Service, United States Conference of Catholic Bishops, World Relief, State of Iowa – Bureau of Refugee Services.

- Records detailing record-keeping procedures for individual refugee files;

- Records of agreements between the United States and Third Party countries relating to the admission of Iraqi refugees, including, but not limited to, Jordan, Lebanon, Egypt, Syria, Iraq, Australia, Canada, Switzerland, Finland and the United Kingdom.

- Records related to security check procedures of Iraqi resettlement applicants, including, but not limited to:
  - ◦ Records indicating  the agencies that are required to give approval during a security check;
  - ◦ Guidance or memoranda on internal deadlines of each agency for completing the check;
  - ◦ Statistics or other information related to the percentage of security checks processed within those deadlines;
  - ◦ Statistics or other information related to the percentage of security checks processed within the total inter-agency deadline of 45 days;
  - ◦ Guidance or memoranda dictating the order in which the various agencies process security checks;
  - ◦ Guidance or memoranda describing procedures for internal review provided (or lack thereof) if an applicant comes up as a possible security risk;
  - ◦ Records relating to processing times for background checks for Iraqi asylum-seekers, refugee applicants, and SIV petitioners; and
  - ◦ Names of any and all private contractors used to conduct any portion of the security check.

- All records, including guidance, memoranda, and reports, documenting efforts to expedite Iraqi refugee processing in order to comply with the FY 2008 and 2009 targets;

- A record of the powerpoint presentation given by Mr. Phil Eanes of IOM-Amman at the meeting in Amman that included himself, Rusty Ingraham and members of the Iraqi Refugee Assistance Project on December 30, 2008;

- Data definition records for the database(s) that contain records regarding Iraqi refugee interviews and resettlement application information.

- Records, including any manuals, for the database(s) that contains records regarding Iraqi refugee interviews and resettlement application information;

**Expedited Processing**

This request warrants expedited processing because there is a "compelling need for the information." 22 CFR § 171.12(b). Since 2003, the Iraq war has displaced up to 5 million people and left more than two million Iraqi refugees stranded in Syria, Jordan and other neighboring countries. Denied basic freedoms such as the right to work and unable to return to their homes because of ongoing violence, refugees struggle to subsist on dwindling savings. While some hope for a better life in the West, very few have been resettled - the United States will take in about 17,000 Iraqi refugees this year, a tiny fraction of those in need. Other countries are accepting even fewer. The result is perhaps the gravest humanitarian crisis facing the region in more than half a century. Many Iraqis have been waiting for years in extremely urgent and life-threatening situations for a chance to be resettled in the United States. Because it is illegal for them to work in their current countries of residence, they slowly eat through any savings they may have had. Many children cannot go to school and families cannot afford sufficient food or health care. Religious minorities continue to be persecuted, women are forced to become sex workers and locals take advantage of vulnerable populations. We are requesting the above information to help specific clients whose lives depend on it, as well as to attempt to address the overall crisis in processing.

Failure to obtain the information we request on an expedited basis will therefore "pose an imminent threat to the life [and] physical safety" of thousands of Iraqi refugees, including current and future clients of IRAP, and "impair [their] substantial due process rights," in addition to "harm[ing] substantial humanitarian interests." 22 CFR § 171.12(b).

**Public Interest Fee Waiver**

IRAP requests a waiver of fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii)(II), (a)(4)(A)(iii) and 22 CFR § 171.17. To determine whether a request meets this standard, the Department of State considers whether the information is likely to contribute significantly to public understanding of the operations or activities of the Government and if it is not primarily in the commercial interest of the requester. 22 CFR § 171.17. This request clearly satisfies these criteria. The subject of the requested records concerns the operations and activities of the U.S. Department of State in its processing of Iraqi refugees, its interaction with private agencies in these operations, and its implementation of federal law (the "Refugee Crisis in Iraq Act of 2007"), and disclosure of this information is likely to contribute to IRAP and the public's understanding of such operations and activities. 22 CFR § 171.17(a)(1). IRAP is a student organization within Yale Law School, a graduate school within Yale University, which has § 501(c)(3) non-profit tax status, and has no commercial interest in the disclosure of the requested records. 22 CFR § 171.17(a)(2).

If this request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the Act. In addition, please release all segregable portions of otherwise exempt material. Please provide all materials and records in electronic format, if they are so available. We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees. Pursuant to the applicable statutory provision and Department regulations, we expect a response within the ten (10) day statutory time limit. 22 CFR § 171.12(b). If you have any questions in processing this request, we can be contacted by mail at the address above or by telephone at (415) 218 – 9092. Thank you for your assistance in this matter.

Sincerely,

Jonathan Finer, Rebecca Heller and Adrienna Wong
The Iraqi Refugee Assistance Project
Yale Law School
127 Wall Street
New Haven, CT 06510

Sally Newman
The Iraqi Refugee Assistance Project
New York University School of Law
40 Washington Square South
New York, NY 10012

Ian Kysel
Georgetown Law School
600 New Jersey Ave, NW
Washington, DC 20001

Jennifer Rikoski
Ropes and Gray
One International Place
Boston, MA 02110

Exhibit E



**Adri Wong <adriwong.esq@gmail.com>**

# 200901707 Wong, Adrienna ack Valid FOIA-CBltr.doc

**Parker, John A <ParkerJA3@state.gov>**                                **Thu, Apr 2, 2009 at 3:19 PM**
To: adrienna.wong@yale.edu, jonathan.finer@yale.edu, rebecca.heller@yale.edu
Cc: maureen.furtak@yale.edu, "Tyler, Eva O" <TylerEO@state.gov>

Attached please find the reply to your FOIA request for information on Iraqi refugee processing that we mailed to Ms. Wong on March 13, 2009. We have today received your second request, indicating that the letter has not reached you. Your case number is 200901707. You may call  202-264-8484 to ask for the status of your request.

If any of you have any additional questions please do not hesitate to contact me.


<<200901707 Wong, Adrienna ack Valid FOIA-CBltr.doc>>

---

 **200901707 Wong, Adrienna ack Valid FOIA-CBltr.doc**
54K



**United States Department of State**

*Washington, D.C.  20520*

MAR 13 2009

Case Number 200901707

Ms. Adrienna Wong
The Iraqi Refugee Assistance Project
Yale Law School
127 Wall Street
New Haven, CT  06510

Dear Ms. Wong:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request, dated February 19, 2009, for copies of records relating to the **processing of Iraqi refugees and Special Immigrant Visa applicants, including Internally Displaced Persons,** from April 1, 2003 to the present.

We will begin the processing of your request based upon the information provided in your communication.  We will notify you as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is either the date you have given the Department by specifying a particular time frame, or the date the search initiated.

## Fees

The Freedom of Information Act (FOIA) requires agencies to assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

***According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted.***

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

- 2 -

***You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified.***

☐   You have stated your willingness to pay the fees incurred in the processing of this request up to $_____.

☒   Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

☐   Commercial Use Requesters – Requires us to assess charges that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

☐   Educational Institution Requesters – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

☐   Non-commercial Scientific Institution Requesters – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

☐   Representatives of the News Media – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
    *Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

☒  All Other Requesters – Requires us to assess charges that recover the
full reasonable direct cost of searching for and duplicating the
record(s) sought, after the first 100 pages of duplication, and the first
two hours of search time.

☒  You have indicated your inclusion in a category different than the
one indicated above.  Please forward the information requested on
the enclosed sheet titled "Requester Categories" to substantiate
your inclusion in a particular category of requester.

## Fee Waiver

☐  Your request for a fee waiver has been granted; therefore, your request
will be processed at no charge to you.

☒  Based upon the information provided in your letter, your request for a
fee waiver has been denied.  If you wish to appeal this decision, you
may write to the Chief, Requester Liaison Division, at the address
given on the bottom of this page.  Your appeal should address the
points listed in the enclosed sheet titled "Requests for Fee Waivers."
Your appeal must be sent to us within 30 days from the date that you
receive this letter.

## Expedition

☐  After consideration of your request for expedited processing under the
Department's rules governing Freedom of Information Act requests,
we have determined that your request does warrant expedited
processing.

Although we cannot promise that the processing of your request will
be completed by a specific date, it will be processed ahead of all other
requests now pending with the Department, except for those other
requests already determined to warrant expedition.

☒  Our published regulations regarding expedition, 22 C.F.R. 171.12(b),
require a specific showing of a compelling need.  Expeditious

---

*Office of Information Programs and Services*     *Inquiries:*
*U.S. Department of State, SA-2*               *Phone:  1-202-261-8484*
*Washington, DC 20522-8100*                    *FAX:  1-202-261-8579*
*Website:  www.foia.state.gov*                 *E-mail:  FOIAStatus@state.gov*

processing is granted only in the following situations: (1) imminent threat to the life or physical safety of an individual; (2) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (3) substantial humanitarian reasons; and (4) loss of substantial due process rights. Your request does not meet any of the established criteria. Regrettably, I must advise that you have not provided adequate justification for expedition. However, you may be assured that we will make every effort to process your request in as timely a manner as possible. For your convenience, I have enclosed a copy of the Department's expeditious processing criteria.

If you wish to appeal the denial of expedition, you may write to the Chief, Requester Liaison Division, at the address below, within 30 days of receipt of this letter.

## Other Agency Material

☐   Some of the material that you seek appears to have been originated by another agency(ies). If you wish to contact the Freedom of Information/Privacy Office of that agency(ies), the address(es) can be found on the attached list.

☐   Some of the records you seek are no longer in the possession of the State Department. The majority of Department of State records (excluding passport and visa records) which are 25 years or older are transferred to the National Archives and Records Administration (NARA) in accordance with Title 22, Code of Federal Regulations, Part 171.6. Accordingly, requests for such records should be addressed to:

>   National Archives and Records Administration
>   8601 Adelphi Road, Room 311
>   College Park, MD 20740-6001

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
  *Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

☐    For pre-1925 passport records, and visa records dating 1910-1940, please contact:

> Civil Records
> National Archives & Records Administration
> Washington, DC 20408

If you wish to review further information on our requirements for maintenance or disposal of records, please visit the following website: foia.state.gov/records.asp.

While we will make every effort to meet the time limits cited in the FOIA (5 U.S.C. § 552), unusual circumstances may arise for extending the time limit (see enclosure). We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us at the number or address below. We can provide faster service if you include the case number of your request in your communications with us.

We are pleased to be of service to you.

Sincerely,

Patrick D. Scholl, Acting Chief
Requester Communications Branch
*ISO 9001:2000 Certified*

Enclosures: As stated.

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
        *Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

## Fee Waiver Information Sheet

It is the Department's policy to treat each request for a fee waiver on a case-by-case basis. As noted in our letter, before we can make a decision about your request for fee waiver or fee waiver appeal, we need additional information concerning your request and your intended use of the requested documents. Please provide the following:

1. State why you believe the subject matter of your request concerns the operations or activities of the Federal Government.

2. From what other sources have you attempted to obtain this information? Have you tried to obtain this information from the Foreign Relations of the United States, the National Archives and Records Administration, or public libraries? Demonstrate the absence of the requested information from the public domain.

3. Provide a summary of your educational background and work experience, particularly in the field of foreign affairs, and your expertise in the subject area of your request.

4. Expand on your ability and intent to disseminate the information requested. E.g., Have you published or disseminated information in this or related fields in the past? Is the information requested to be used in a specific article or paper currently being prepared? When is the article to be published or the program to be aired? To what audience is the article or program aimed?

5. Identify the particular person who will actually use the requested information in scholarly or other analytical work and then disseminate it.

6. Describe any commercial interest which would be furthered by the disclosure of the requested information, e.g., will you be paid for the publication or dissemination of the requested information? If so, how much will you be paid and in what manner will you receive payment? Will you receive any other type of commercial benefit due to your dissemination of the requested information? A "commercial interest" is one that furthers a commercial, trade, or profit interest as those terms are commonly understood.

7. If your request for a fee waiver is not granted, we need your written assurance that you are willing to pay the fees associated with the processing of your request. You may set a limit on the amount you are willing to pay. In some cases, we will not be able to make a determination about a fee waiver until the processing of the request has been completed, at which time an independent evaluation will be made of the releasable material.

Please send this information to: Office of Information Programs and Services, A/RPS/IPS/RL, Room 8100, Department of State, 515 22nd Street, N. W., Washington, D.C. 20522-8100. Refer to your request number in your correspondence to us.

RC-IS-7.5.1b-2
July 6, 2005

## Expeditious Processing Information Sheet

Expedited processing shall be granted to a requester after the requester requests such and demonstrates a compelling need for the information. A compelling need in deemed to exist where the requester can demonstrate one of the following:

1. **A Compelling Need** means that the failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.

2. **A Compelling Need** means that the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. An individual primarily engaged in disseminating information to the public. Representatives of the news media would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the pubic, not just to a particular segment or group.

   (a) **Urgently Needed** means that the information has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of historical interest only, or information sought for litigation or commercial activities would not qualify nor would a news media publication or broadcast deadline unrelated to the news breaking nature of the information.

   (b) **Actual or Alleged Federal Government Activity.** The information concerns some actions taken, contemplated, or alleged by or about the Government of the United States, or one of its components or agencies, including the Congress.

3. **Substantial Due Process** rights of the requester would be impaired by the failure to process immediately; or

4. **Substantial Humanitarian** concerns would be harmed by the failure to process immediately.

A demonstration of compelling need by a requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge.

RC-IS-7.5.1b-1
July 6, 2005

Requester Categories

If you believe that you should NOT be considered a commercial use requester, please provide:

- Evidence that your use of the requested information will NOT further any commercial, trade, or profit interest of yourself or the person (s) on whose behalf the request is made.

If you believe that you should be considered an educational or non-commercial scientific institution requester, please provide:

- A statement, signed by the chairperson of your department, which indicates that your request is authorized by and under the auspices of a specific institution and that the requested records are not sought for a commercial use and are not intended to promote any particular product or industry, but are sought in furtherance of scholarly or scientific research.

If you believe that you should be considered a representative of the news media, please provide:

- Evidence that you are employed by an entity that is organized and operated to publish or broadcast news to the public.
- Evidence, if you are associated with a periodical publication such as a newsletter, that your product is available for purchase or subscription by the general public.
- Evidence, if you are a freelance journalist, of the likelihood of publication through the news media (e.g., a publication contract, examples of past publications, etc.).
- Evidence that the information you request is about current events or would be of current interest to the public.

§ 171.11 Definitions.
**Unusual Circumstances**

As used in this subpart, the following definitions shall apply:

(a) *Freedom of Information Act* or *FOIA* means the statute codified at 5 U.S.C. 552, as amended.

(b) *Department* means the United States Department of State, including its field offices and Foreign Service posts abroad;

(c) *Agency* means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive Office of the President), or any independent regulatory agency;

(d) *Information and Privacy Coordinator* means the Director of the Department's Office of Information Programs and Services (IPS) who is responsible for processing requests for access to information under the FOIA, the Privacy Act, E.O. 12958, and the Ethics in Government Act;

(e) *Record* means all information under the control of the Department, including information created, stored, and retrievable by electronic means, regardless of physical form or characteristics, made in or received by the Department and preserved as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Department or because of the informational value of the data contained therein. It includes records of other Government agencies that have been expressly placed under the control of the Department upon termination of those agencies. It does not include personal records created primarily for the personal convenience of an individual and not used to conduct Department business and not integrated into the Department's record keeping system or files. It does not include

records that are not already in existence and that would have to be created specifically to meet a request. However, information available in electronic form shall be searched and compiled in response to a request unless such search and compilation would significantly interfere with the operation of the Department's automated information systems.

(f) *Control* means the Department's legal authority over a record, taking into account the ability of the Department to use and dispose of the record as it sees fit, to legally determine the disposition of a record, the intent of the record's creator to retain or relinquish control over the record, the extent to which Department personnel have read or relied upon the record, and the degree

**63937 Federal Register /**
**Vol. 69, No. 212 /**
**Wednesday, November 3,**
**2004 / Rules and Regulations**
to which the record has been integrated into the Department's record keeping system or files.

(g) *Direct costs* means those costs the Department incurs in searching for, duplicating, and, in the case of commercial requests, reviewing documents in response to a FOIA request. The term does not include overhead expenses.

(h) *Search costs* means those costs the Department incurs in looking for, identifying, and retrieving material, in paper or electronic form, that is responsive to a request, including pageby-page or line-by-line identification of material within documents. The Department shall attempt to ensure that searching for material is done in the most efficient and least expensive manner so as to minimize costs for both the Department and the requester.

(i) *Duplication costs* means those costs the Department incurs in copying

a requested record in a form appropriate for release in response to a FOIA request. Such copies may take the form of paper copy, microfiche, audio-visual materials, or machine-readable electronic documentation (*e.g.*, disk or CD-ROM), among others.

(j) *Review costs* means costs the Department incurs in examining a record to determine whether and to what extent the record is responsive to the FOIA request and the extent to which it may be disclosed to the requester. It does not include costs of resolving general legal or policy issues that may be raised by a request.

(k) *Unusual circumstances*. As used herein, but only to the extent reasonably necessary to the proper processing of the particular request, the term ''unusual circumstances'' means:

(1) The need to search for and collect the requested records from Foreign Service posts or other separate and distinct Department offices;

(2) The need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request; or

(3) The need for consultation with another agency having a substantial interest in the determination of the request or among two or more components of the Department that have a substantial subject matter interest therein. Such consultation shall be conducted with all practicable speed.

(l) *Commercial use request* means a request from or on behalf of one who requests information for a use or purpose that furthers the commercial, trade, or profit interest of the requester or the person on whose behalf the request is made. In determining whether a requester belongs within this category, the Department will look at the use to which the requester will put the information requested.

(m) *Educational institution* means a preschool, a public or private elementary or secondary school, an institution of undergraduate or graduate higher education, an institution of professional education, or an institution of vocational education, that operates a program or programs of scholarly research.

(n) *Non-commercial scientific institution* means an institution that is not operated on a ''commercial'' basis, as that term is used in paragraph (l) of this section and that is operated solely for the purpose of conducting scientific research, the results of which are not intended to promote any particular product or industry.

(o) *Representative of the news media* means any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public. The term news means information that is about current events or that would be of current interest to the public. News media include television or radio stations broadcasting to the public at large and publishers of periodicals (but only in those instances when they can qualify as disseminators of ''news'') who make their products available for purchase by the general public. Freelance journalists may be regarded as working for a news organization if they can demonstrate, such as by past publication, a likelihood of publication through a representative of the news media, even though not actually employed by it.

(p) *All other* means an individual or organization not covered by a definition in paragraphs (l), (m), (n), or (o) of this section.

**§ 171.15 Fees to be charged—categories of requesters.**

Under the FOIA, there are four categories of requesters: Commercial use requesters, educational and noncommercial scientific institutions, representatives of the news media, and all other requesters. The fees for each of these categories are:

(a) *Commercial use requesters.* When the Department receives a request for documents for commercial use as defined in § 171.11(l), it will assess charges that recover the full direct costs of searching for, reviewing for release, and duplicating the record sought. Commercial use requesters are not entitled to two hours of free search time or 100 free pages of reproduction of documents. The Department may recover the cost of searching for and reviewing records even if there is ultimately no disclosure of records (*see* § 171.16(b)).

(b) *Educational and non-commercial scientific institution requesters.* The Department shall provide documents to requesters in this category for the cost of reproduction alone, excluding charges for the first 100 pages. To be eligible for inclusion in this category, a requester must show that the request is being made as authorized by and under the auspices of a qualifying institution, as defined in § 171.11(m) and (n), and that the records are not sought for a commercial use, but are sought in furtherance of scholarly (if the request is from an educational institution) or scientific (if the request is from a noncommercial scientific institution) research.

(c) *Representatives of the news media.* The Department shall provide documents to requesters in this category for the cost of reproduction alone, excluding charges for the first 100 pages. To be eligible for inclusion in this category, a requester must meet the criteria in § 171.11(o), and the request must not be made for a commercial use. A request for records supporting the news dissemination function of the requester shall not be considered to be a commercial use request.

(d) *All other requesters.* The Department shall charge requesters who do not fit into any of the categories above fees that recover the full reasonable direct cost of searching for and reproducing records that are responsive to the request, except that the first 100 pages of reproduction and the first two hours of search time shall be furnished without charge.

## § 171.14 Fees to be charged—general.

The Department shall seek to charge fees that recoup the full allowable direct costs it incurs in processing a FOIA request. It shall use the most efficient and least costly methods to comply with requests for documents made under the FOIA. The Department will not charge fees to any requester, including commercial use requesters, if the cost of collecting a fee would be equal to or greater than the fee itself. With the exception of requesters seeking documents for a commercial use, the Department will provide the first two hours of search time and the first 100 pages of duplication without charge. By making a FOIA request, the requester shall be considered to have agreed to pay all applicable fees up to $25.00 unless a fee waiver has been granted.

(a) *Searches for responsive records.* If the Department estimates that the search costs will exceed $25.00, the requester shall be so notified. Such notice shall offer the requester the opportunity to confer with Department personnel with the object of reformulating the request to meet the requester's needs at a lower cost. The request shall not be processed further unless the requester agrees to pay the estimated fees.

(1) *Manual searches.* The Department will charge at the salary rate (*i.e.*, basic pay plus 16 percent of basic pay) of the employee making the search.

(2) *Computer searches.* The Department will charge at the actual direct cost of providing the service. This

## 63939 Federal Register /
Vol. 69, No. 212 / Wednesday, November 3, 2004 / Rules and Regulations

will include the cost of operating the central processing unit (CPU) for that portion of operating time that is directly attributable to searching for records responsive to a FOIA request and operator/programmer salary attributable to the search.

(b) *Review of records.* Only requesters who are seeking documents for commercial use may be charged for time spent reviewing records to determine whether they are releasable. Charges may be assessed for the initial review only; *i.e.*, the review undertaken the first time the Department analyzes the applicability of a specific exemption to a particular record or portion of a record.

(c) *Duplication of records.* Records shall be duplicated at a rate of $.15 per page. For copies prepared by computer, such as tapes or printouts, the Department shall charge the actual cost, including operator time, of production of the tape or printout. For other methods of reproduction or duplication, the Department shall charge the actual direct costs of producing the document.

If the Department estimates that the duplication costs will exceed $25.00, the requester shall be so informed. The request shall not be processed further unless the requester agrees to pay the estimated fees.

(d) *Other charges.* The Department shall recover the full costs of providing services such as those enumerated below:

(1) Certifying that records are true copies (*see* part 22 of this chapter); (2) Sending records by special methods such as express mail, overnight courier, *etc.*

(f) Payment shall be in the form either of a personal check or bank draft drawn on a bank in the United States, or a postal money order. Remittances shall be made payable to the order of the Treasury of the United States and mailed to the Information and Privacy Coordinator.

(g) A receipt for fees paid will be given upon request. Refund of fees paid for services actually rendered will not be made.

Exhibit F



ROPES & GRAY LLP
ONE INTERNATIONAL PLACE
BOSTON, MA 02110-2624
WWW.ROPESGRAY.COM

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

April 23, 2009

Chairman, Appeals Review Panel
c/o Information and Privacy Coordinator/Appeals Officer
A/ISS/IPS/PP, SA-2
U.S. Department of State
515 22nd Street, NW
Washington, DC  20522-8100

Re:    ***Freedom of Information Act appeal***
           Case No. 200901707

Dear Chairman:

This letter constitutes an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, regarding a request for Department of State records related to the processing of Iraqi refugees and Special Immigrant Visa applicants including internally displaced persons, from April 1, 2003 to the present. *See* Attachment A. The Iraqi Refugee Assistance Project (IRAP) filed this request by certified mail on February 19, 2009. *See* Attachment B.

In a letter forwarded to us by State Department official John A. Parker on April 2, 2009, Acting Chief of the Requester Communications Branch, Patrick D. Scholl, confirmed that processing of the request had begun and denied IRAP's request for both expedited processing and a fee waiver. *See* Attachments C and D. This letter is the only response IRAP has received from the Department of State regarding its February 19, 2009 FOIA request. The Department of State has not produced any responsive records.

Under 5 U.S.C. § 552(a)(6)(A)(i), an agency has twenty working days to respond to a FOIA request. *See also* 22 CFR §171.12(d). More than twenty working days have passed since our initial request was received. Twenty days have also passed since we received the letter from Mr. Parker indicating that the Department of State intended to produce records. We thus appeal the Department's constructive denial, and ask that it provide us with records responsive to our request.

ROPES & GRAY LLP

Chairman, Appeals Review Panel                -2-                        April 23, 2009


We look forward to receiving your decision on this appeal.  If you have any questions, you may contact me at (617) 951-7354 or jennifer.rikoski@ropesgray.com.

Sincerely,

Jennifer A. Rikoski
Attorney for the Iraqi Refugee Assistance Project

Enclosures

cc:    Scott Anderson, IRAP Yale
       Jonathan Finer, IRAP Yale
       Rebecca Heller, IRAP Yale
       Stephen Poellet, IRAP Yale
       Adrienna Wong, IRAP Yale
       Jinyoung Choi, IRAP NYU
       Alice Nascimento, IRAP NYU
       Sally Newman, IRAP NYU
       Ian Kysel, Georgetown Law School

# Exhibit G



United States Department of State

*Washington, D.C. 20520*

May 4, 2009

Jennifer A. Rikoski
Ropes & Gray LLP
One International Place
Boston, MA  02110-2624

Re: Freedom of Information Request No. 200901707

Dear Ms. Rikoski:

Thank you for your letter of April 23, 2009, concerning Freedom of Information Act request 200901707, in which you note that the Department of State has not yet responded to your FOIA request.

Your FOIA request is not subject to administrative appeal at this time, since no specific material has been denied in response to the request.  Section (a)(6)(C) of the Act provides that a requester shall be deemed to have exhausted his administrative remedies if an agency fails to respond within the applicable time limit, which is twenty days.  The requester, therefore, would not be required to appeal administratively before instituting a suit in federal court.  This provision does not, however, provide a basis for an administrative appeal of a request that is still being processed.  Moreover, a lack of response is not the same as a response that no documents were found.

We have confirmed that your request is being processed, but we are unable to predict the length of time before action on it will be completed.  The Department receives thousands of FOIA and Privacy Act requests a year and yours will be processed in turn.  We have sent a copy of your letter to the office which has been assigned responsibility for processing your request.

Sincerely,

*E. Ray McLaughlin*

E. Ray McLaughlin
Office of Information Programs
    and Services

Exhibit H

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
Fax  212 909 6836
www.debevoise.com

November 2, 2009

Office of Information Programs and Services
A/RPS/IPS/RL, Room 8100
United States Department of State
515 22nd Street, N.W.
Washington, D.C. 20522-8100

VIA FACSIMILE

**Agreement to Pay Fee (Case No. 200901707)**

Dear FOIA Officer:

This letter is in response to the State Department's March 13, 2009 letter to the Iraqi Refugee Assistance Project (IRAP), acknowledging receipt of IRAP's FOIA request, denying its fee waiver request and seeking IRAP's confirmation that it will pay the fees associated with its request.  IRAP regrets that its request for a fee waiver was denied and continues to believe that a fee waiver was warranted in this case, however it recognizes that the time to appeal the Department's denial has expired.  IRAP therefore agrees to pay the fees associated with its State Department FOIA request, dated February 19, 2009, subject to a review of the final costs incurred.  While IRAP is not prepared to set a maximum fee at this time, if the final costs greatly exceed IRAP's expectations, it may seek to limit the amount of its assessed fee upon notification of that figure.

If you have any questions, please feel free to contact Corey S. Whiting at (212) 909-6699 or Lauren M. Weiner at (212) 909-6953.

Sincerely,

Corey S. Whiting
Lauren M. Weiner

*Counsel for IRAP*